# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:08 MD 1932

| | | |
|---|---|---|
| SHAWN ERIC WARD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FAMILY DOLLAR STORES, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

 **THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 358); Plaintiff's Response in Opposition (Doc. No. 430); and Defendant's Reply (Doc. No. 473).[1]  For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action with Shawn Eric Ward as lead plaintiff.  On January 22, 2008, this Court denied plaintiffs' Motion to Facilitate Notice.  (3:06cv441, Doc. No. 67.) In a related action, this Court denied Plaintiff Irene Grace's Motion for Preliminary Certification as a Collective Action by Order dated September 6, 2007.  (3:06cv306, Doc. No. 78.)  On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to Ms. Grace's case and dismissed Ms. Grace from the action. (3:08md1932, Doc. No. 172.)  Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals.  The Court of Appeals held that Ms. Grace was a manager and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc.  *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions.  The Court will also disregard exhibits based on the *Morgan* case.  In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Darrell Baker ("Baker") began working for Family Dollar in or around October 2004 where he was trained to become a Store Manager.[3] (Doc. No. 360, Baker Dep. at 25, 32, 135.)[4] In or around December 2004, Family Dollar assigned Baker to become Store Manager of Store 2082. (*Id*. at 56, 254.) Baker's employment with Family Dollar ended in or around February 2005. (*Id*. at 135.) At the time Baker became store manager at store 2082 and throughout his employment, Family Dollar paid Baker a salary of $750 per week. (*Id*. at 55, 57.)

The record shows that of the ten (10) nonexempt employees who worked in Store 2082 from December 2004 to February 2005, eight (8) made $6.50 per hour or less (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $6.75 per hour). (Doc. No. 360, Debrocq Decl. ¶ 6.)[5] Baker reported working an average of sixty-five (65) to seventy (70) hours per week as store manager. (Doc. No. 360, Baker Dep. at 114.) Family Dollar's records also reflect that Baker managed at least 80 employee hours

---

[3] Baker filed his opt-in consent form on June 22, 2006. Accordingly, June 22, 2003, or three years prior to his opt-in date, through the end of his management position in February 2005, represents the longest possible relevant time period for Baker's claims in this action.

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts his sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. V. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony he gave in his deposition, where he was examined at length about his responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[5] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

100% of the time he was a store manager during the relevant time period. (Doc. No. 360, Debrocq Decl. ¶ 5.)

Baker contends that he devoted 80% of his time performing nonexempt work. (Doc. No. 360, Baker Dep. at 162-63.) He admitted, however, that he was also the person responsible for running the store. (*Id*. at 272.) For example, Baker admitted that even when he was doing non-managerial tasks in the store, he was responsible for providing customer service, correcting his employees' mistakes, and answering his employees' questions. (*Id*. at 162-64, 249.) Baker's managerial tasks included training, supervising, and directing employees (*Id*. at 79, 144-45, 171, 187, 262), completing the store's financial paperwork (*Id*. at 207-11), apportioning hours to employees (*Id*. at 114-15, 127, 168), and addressing customer complaints (*Id*. at 157, 191-92). Baker also decided how to train his employees (*Id*. at 79, 171, 187, 262); how to adjust the schedule (*Id*. at 114-15); how to assign and apportion work among himself and his employees (*Id*. at 275); how to review employment applications and interview candidates (*Id*. at 90-91); what merchandise to order (*Id*. at 198-99); and how to keep an eye on shrinkage (*Id*. at 190).

Baker specifically testified that he was responsible for weeding through employment applications so that he could identify the best candidates. (*Id*. at 90-91.) After he narrowed down the applicant pool, those candidates - from the narrowed-down applicant pool - would be interviewed by the district manager. (*Id*.) Baker admitted that he spoke with the candidates during the hiring process and made recommendations to his district manager as to whether they should be hired, and the district manager followed some of these recommendations. (*Id*. at 91.)

As Store Manager, Baker reported to a District Manager. Baker testified that his district manager, Randy Baggett, would visit the store two to three times a week. (*Id*. at 286-87.)

Moreover, Family Dollar's records indicate that, during the relevant time period, Mr. Baggett oversaw approximately eleven (11) stores, including the store managed by Baker. (Doc. No. 360, Debrocq Decl. ¶ 4.)

**<u>STANDARD OF REVIEW</u>**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all

evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) he is compensated on a salary basis at a rate of at least $455 per week; (2) his primary duty is management of the enterprise; (3) he customarily and regularly directs the work of two or more other employees; and (4) he has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Baker qualifies as an exempt executive.

1.      **Family Dollar Satisfies the Salary Basis Test**[6]

At the time Baker became store manager at store 2082 and throughout his employment, Family Dollar paid Baker a salary of $750 per week.  (Doc. No. 360, Baker Dep. at 55, 57.) Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week.  29 C.F.R. § 541.100.

2.      **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined.  The regulations instruct that the determination should be "based on all the facts in a particular case."  29 C.F.R. § 541.700(a).  The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor.  (*Id.*)

Upon consideration of the factors identified for determining whether Baker's primary duty was management, the Court concludes that the factors are readily satisfied.

a.      **The Amount of Time Spent in Performance of Managerial Duties**

Baker cannot overcome the exemption by claiming he spent the majority of his time performing non-managerial duties.  Both sets of regulations state that an employee who spends

---

[6]The Court finds Baker's argument that he was merely a "working foreman" unavailing.  The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption."  29 C.F.R. § 541.106(b) (emphasis added).  Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line.*" (emphasis added.)

more than fifty percent of his or her time performing managerial work will typically satisfy the

primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The

regulations, however, also emphasize that "time alone…is not the sole test" and that exempt

executives are *not required to spend more than fifty percent of their time performing exempt*

*work* if other factors support the conclusion that management is their primary duty. *Id; see also*

*Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

   Both sets of regulations provide an almost identical list of "management" activities,

which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of
> pay and hours of work; directing their work; maintaining their production or sales
> records for use in supervision or control; appraising their productivity and efficiency
> for the purpose of recommending promotions or other changes in their status;
> handling their complaints and grievances and disciplining them when necessary;
> planning the work; determining the techniques to be used; apportioning the work
> among the workers; determining the type of materials, supplies, machinery or tools
> to be used or merchandise to be bought, stocked and sold; controlling the flow and
> distribution of materials or merchandise and supplies; providing for the safety of the
> [employees] and the property; planning and controlling the budget; and monitoring
> or implementing legal compliance measures. [7]

29 C.F.R. § 541.102. Baker explicitly testified that he regularly performed *many* of these

management activities as a Family Dollar Store Manager.[8]

---

[7]An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[8]The fact that the Assistant Managers can perform the same tasks as Baker does not render his tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[9] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Baker contends that he devoted 80% of his time performing nonexempt work, he was also the person responsible for running the store. (Doc. No. 360, Baker Dep. at 162-63, 272.) For example, Baker admitted that even when he was doing non-managerial tasks in the store, he concurrently was responsible for providing customer service, correcting his employees' mistakes, and answering his employees' questions. (*Id*. at 162-64, 249.) While Baker argues that management was not his primary duty because he spent a majority of his time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

---

[9] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Baker's managerial duties were more important than the other duties he performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Baker's managerial tasks, which included training, supervising, and directing employees (Doc. No. 360, Baker Dep. at 79, 144-45, 171, 187, 262), completing the store's financial paperwork (*Id*. at 207-11), apportioning hours to employees (*Id*. at 114-15, 127, 168), and addressing customer complaints (*Id*. at 157, 191-92) were critical to the operation of the store. While Baker argues that he was under the direct supervision of the district manager, he nonetheless stated that he would visit the store two to three times a week – not enough to direct the managerial tasks. (*Id*. at 286-87.) Therefore, because he was the *only person running the store*, the store could not have operated successfully without Baker's handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen

stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also*

*Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it

significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to

situations where a higher level manager was responsible for only a few stores).

Baker was relatively free from supervision during the relevant time period. Baker

testified that his district manager, Randy Baggett, would visit the store two to three times a week.

(Doc. No. 360, Baker Dep. at 286-87.) Moreover, Family Dollar's records indicate that, during

the relevant time period, Mr. Baggett oversaw approximately eleven (11) stores, including the

store managed by Baker. (Doc. No. 360, Debrocq Decl. ¶ 4.) The infrequency of Mr. Baggett's

visits and the large number of stores he was responsible for supervising does not allow him to

micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to

nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned

more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a

"profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager

had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Baker earned significantly higher amounts on an hourly

basis than nonexempt workers. The record shows that of the ten (10) nonexempt employees who

worked in the store where Baker was the store manager from December 2004 to February 2005,

eight (8) made $6.50 per hour or less (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $6.75 per hour). (Doc. No. 360, Debrocq Decl. ¶ 6.) In comparison, Baker testified that he worked an average of sixty-five (65) to seventy (70) hours per week as store manager. (Doc. No. 360, Baker Dep. at 114.) Baker earned compensation which, when computed on an hourly basis, averaged $11.54 per hour or $10.71 per hour ($750 per week). A review of these calculations and comparisons reveal a significant difference in wages between Baker and his nonexempt employees.[10]

### e.  Frequency With Which the Employee Exercises Discretionary Power

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Baker exercised discretion virtually every day and all day long in his capacity as store manager supports that his primary duty was management. Baker decided how to train his employees (*Id*. at 79, 171, 187, 262); how to adjust the schedule (*Id*. at 114-15); how to assign and apportion work among himself and his employees (*Id*. at 275); how to review employment applications and interview candidates (*Id*. at 90-91); what merchandise to order (*Id*. at 198-99);[11] how to keep an eye on shrinkage (*Id*. at 190); and, while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family

---

[10]As to the second consideration, there is no evidence that Baker received a bonus during the relevant time period. However, the Court notes that Baker was only employed by Family Dollar as a manager for three months. Even without receiving a bonus, Baker still earned significantly more than his nonexempt employees.

[11]Baker testified that he "had about fifteen percent discretionary spending of inventory." (Doc. No. 360, Baker Dep. at 202-03.)

Dollar maintains certain policies and procedures for the sake of consistency does not mean that

Baker failed to exercise discretion in enforcing these policies and procedures.[12]

**3.    Customary and Regular Direction of the Work of Two or More other Employees**

To qualify as an executive, the regulations require an employee's primary duty to include

the "customary and regular direction of the work of two or more other employees."  29 C.F.R. §

541.100(a)(3).  "The phrase 'customary and regular' means a frequency that must be greater than

occasional but which, of course, may be less than constant."  29 C.F.R. § 541.701.  Baker, on a

daily basis, directed the work of his employees.  (Doc. No. 360, Baker Dep. at 144-45.)

Both sets of regulations also require the employee direct the work of "two full-time

employees or the equivalent."  29 C.F.R. § 541.104(a).  The DOL has adopted an "80-hour rule"

which generally requires an exempt executive to direct a total of eighty employee-hours of work

each week.  *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace

customarily and regularly directed the work of two or more other employees who worked eighty

or more hours per week during 89.23% of the weeks that she was store manager).  Family

Dollar's records reflect that Baker managed at least 80 employee hours 100% of the time he was

a store manager during the relevant time period.[13]  (Doc. No. 360, Debrocq Decl. ¶ 5.)  Therefore,

---

[12]*See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

[13]Baker's deposition testimony supports Family Dollar's records because he testified that he supervised 12 employees at store 2082, two of which worked full-time, when he was a store manager during the relevant time period.  (Doc. No. 360, Baker Dep. at 68.)

Baker customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

      **4.      Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight**

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire _or_ fire other employees _or_ his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." _Id_.

Baker's deposition testimony establishes that he meets the additional prong of the executive exemption test contained in the current regulations, namely that his suggestions and recommendations as to the hiring and change of status of other employees were given particular weight.  Baker testified that he was responsible for weeding through employment applications so that he could identify the best candidates. (Doc. No. 360, Baker Dep. at 90-91.)  After he

narrowed down the applicant pool, those candidates - from the narrowed-down applicant pool - would be interviewed by the district manager. (*Id*.) Baker admitted that he spoke with the candidates during the hiring process and made recommendations to his district manager as to whether they should be hired, and the district manager *followed* some of these recommendations. (*Id*. at 91.) Therefore, while Baker may not have had the ultimate decision making authority with respect to hiring, it is undisputable that at least some of his recommendations were closely followed, thereby satisfying the particular weight requirement.[14]

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Baker as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1)     Defendant's Motion for Summary Judgment (Doc No. 358) is GRANTED and Plaintiff Darrell Baker is dismissed;

(2)     The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Darrell Baker's claim against Family Dollar;

---

[14]The Court recognizes that Baker was a store manager from December 2004 until February 2005, only a few months. Therefore, simply because Baker never had to exercise his authority to fire or promote an employee does not mean that the authority did not exist. *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 569-70 (8th Cir. 1995) (citing *Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991) (the court should not disregard a manager's responsibility simply because certain events do not happen or happen often).

(3)        The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar

with regard to Plaintiff Darrell Baker.

**SO ORDERED.**

Signed: November 9, 2011

Graham C. Mullen
United States District Judge