IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| SHAWN ERIC WARD, )<br>)<br>      **Plaintiff,** )<br>)<br>v. )<br>)<br>FAMILY DOLLAR STORES, INC., )<br>)<br>      **Defendant.** )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 346); Plaintiff's Response in Opposition (Doc. No. 441); Defendant's Reply (Doc. No. 497); and Defendant's Supplements to its Motions (Doc. No. 784).[1] For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] On January 22, 2008, this Court denied Ward's Motion to Facilitate Notice. (3:06cv441, Doc. No. 67.) In a related action, this Court denied Plaintiff Irene Grace's Motion for Preliminary Certification as a Collective Action by Order dated September 6, 2007. (3:06cv306, Doc. No. 78.) On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to Ms. Grace's case and dismissed Ms. Grace from the action. (3:08md1932, Doc. No. 172.) Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Shawn Ward, began working at Family Dollar on November 12, 2004. (Doc. No. 347, Ward Dep. at 16, 35.)[3] About a month later, Ward was promoted to the position of store manager of store number 4019. (*Id*. at 40, 48.) Ward remained in that position through the end of his employment in June of 2005.[4] (*Id*. at 16.) At the time Ward became store manager and throughout his employment, Family Dollar paid Ward a salary of $750 per week. (Doc. No. 784, DeBrocq Decl. at ¶ 3.)[5] Ward earned bonuses of $344.07 in 2005 (Doc. No. 347, DeBrocq Decl. at ¶ 6) that was directly tied to his store's profitability. (Doc. No. 347, Ward Dep. at 50.) Ward worked an average of 67.6 hours per week as store manager. (Doc. No. 347, DeBrocq Decl. at ¶ 7.)

The record shows that the thirty-nine nonexempt employees who worked in the store where Ward was the store manager, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $6.73 per hour. (*Id*. at ¶ 9.)

---

[3] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts his sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony he gave in his deposition, where he was examined at length about his responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[4] Ward filed his complaint on June 1, 2006. Accordingly, June 1, 2003, or three years prior to the complaint's filing date, through the end of his employment in June 2005, represents the longest possible relevant time period for Ward's claims in this action.

[5] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

Family Dollar's records reflect that Ward managed at least 80 employee hours 95.83% of the time he was a store manager during the relevant time period. (*Id*. ¶ 8.)

Ward contends that he devoted 98-99% of his time performing nonexempt work, he was also the person responsible for running the store. (Doc. No. 347, Ward Dep. at 51, 192.) For example, Ward would answer employee and customer questions, and process refunds, while at the same time performing manual tasks such as stocking product. (*Id*. at 108-09.)

Ward's managerial tasks included training, supervising, and directing employees (Doc. No. 347, Ward Dep. at 149, 186), completing the store's financial paperwork and deposits (*Id*. at 106, 110-13), apportioning hours to employees (*Id*. at 87-88), and addressing customer complaints and issues (*Id*. at 108.) He also decided how to review employment applications and interview candidates (*Id*. at 62-64, 77-80); how to control the flow of merchandise (*Id*. at 115-19); what steps to take to control shrink (*Id*. at 52-53); and how to control the store's payroll budget (*Id*. at 129-30); while at the same time, satisfying customers.

For the majority of Ward's employment Randy Baggett worked as Ward's district manager. Ward testified that Baggett would visit the store less than once a week and stayed only for an hour or two each time. (Doc. No. 347, Ward Dep. at 53-55.) For the last two or three weeks of his employment, Ward's district manager was Malcolm Cannon. (*Id*. at 60-61.) During that time, Cannon only visited Ward's store once or twice. (*Id*. at 61.) Moreover, Family Dollar's records indicate that, during the relevant time period, Ward's district manager was responsible for overseeing twelve stores, including the store managed by Ward. (Doc. No. 347, Debrocq Decl. ¶ 4.) The district spanned approximately forty-five miles. (*Id*.)

Ward testified that he was directly involved with gathering applications, interviewing, and hiring employees. (Doc. No. 347, Ward Dep. at 62, 64-65, 80-81.) Ward also admitted that

3

he terminated at least one employee. (*Id*. at 133-36.) For some hires, Ward would have to send the applicant's information to the corporate office for final approval. (*Id*. at 71.) If Ward liked an applicant, his recommendation would go to the district manager for approval. (*Id*. at 173.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore

4

only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) he is compensated on a salary basis at a rate of at least $455 per week; (2) his primary duty is management of the enterprise; (3) he customarily and regularly directs the work of two or more other employees; and (4) he has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Ward qualifies as an exempt executive.

### 1.  Family Dollar Satisfies the Salary Basis Test

At the time Ward became store manager at store 4019 and throughout his employment, Family Dollar paid Ward a salary of $750 per week. (Doc. No. 784, DeBrocq Decl. at ¶ 3.)

Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100.

2. **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Ward's primary duty was management, the Court concludes that the factors are readily satisfied.

a. **The Amount of Time Spent in Performance of Managerial Duties**

Ward cannot overcome the exemption by claiming he spent the majority of his time performing non-managerial duties.[6] The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more

---

[6] The Court finds Ward's argument that he was merely a "working foreman" unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line.*" (emphasis added.)

6

than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[7] *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011).

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. [8]

29 C.F.R. § 541.102. Ward explicitly testified that he regularly performed the majority of these management activities as a Family Dollar Store Manager.[9]

---

[7] The Court disagrees with Ward's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Ward's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that *specific case*. (emphasis added.) Additionally, Ward's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

[8] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[9] The fact that the Assistant Managers can perform the same tasks as Ward does not render his tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[10] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Ward contends that he devoted 98-99% of his time performing nonexempt work, he was also the person responsible for running the store. (Doc. No. 347, Ward Dep. at 51, 192.) For example, Ward would answer employee and customer questions, and process refunds, while at the same time performing manual tasks such as stocking product. (*Id*. at 108-09.) While Ward argues that management was not his primary duty because he spent a majority of his time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

        b.      **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Ward's managerial duties were more important than the other duties he performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial

---

[10] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Ward's managerial tasks, which included training, supervising, and directing employees (Doc. No. 347, Ward Dep. at 149, 186), completing the store's financial paperwork and deposits (*Id*. at 106, 110-13), apportioning hours to employees (*Id*. at 87-88), and addressing customer complaints and issues (*Id*. at 108), were critical to the operation of the store. While Ward argues that he was under the direct supervision of the district manager, he nonetheless stated that he would visit the store at most once a week for only an hour or two at a time – not enough to direct the managerial tasks. (*Id*. at 54.) Therefore, because he was the only person running the store, the store could not have operated successfully without Ward's handling of these managerial tasks.

   c. **Relative Freedom from Supervision**

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Ward was relatively free from supervision during the relevant time period. For the majority of Ward's employment, Randy Baggett worked as Ward's district manager. Ward testified that Baggett would visit the store no more than once a week and stayed only for an hour or two each time. (Doc. No. 347, Ward Dep. at 54.) For the last two or three weeks of his employment, Ward's district manager was Malcolm Cannon. (*Id*. at 60-61.) During that time, Cannon only visited Ward's store once or twice. (*Id*. at 61.) Moreover, Family Dollar's records indicate that, during the relevant time period, Ward's district manager was responsible for overseeing twelve stores, including the store managed by Ward. (Doc. No. 347, Debrocq Decl. ¶ 4.) The district spanned approximately forty-five miles. (*Id*.) The infrequency of Ward's district managers' visits and the large number of stores they were responsible for supervising does not allow them to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Ward earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the thirty-nine nonexempt employees who worked in the store where Ward was the store manager, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $6.73 per

hour. (Doc. No. 347, Debrocq Decl. ¶ 9.) In comparison, Ward worked an average of 67.6 hours per week as store manager. (*Id*. at ¶ 7.) Ward earned compensation which, when computed on an hourly basis, averaged $11.09 per hour ($750 per week).

As to the second consideration, Ward was a "profit center;" his performance evaluation, salary, and bonus depended on his store's profitability. *See Grace*, 637 F.3d at 517. Ward earned bonuses of $344.07 in 2005 (Doc. No. 347, DeBrocq Decl. ¶ 6), which was directly tied to his store's profitability. (Doc. No. 347, Ward Dep. at 50.) A review of these calculations and comparisons reveal a significant difference in wages between Ward and his nonexempt employees.

    e.  **Frequency With Which the Employee Exercises Discretionary Power**

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Ward exercised discretion virtually every day and all day long in his capacity as store manager supports that his primary duty was management. Ward decided how to adjust the schedule (Doc. No. 347, Ward Dep. at 87-88); how to review employment applications and interview candidates (*Id*. at 62-64, 77-80); how to control the flow of merchandise (*Id*. at 115-19); what steps to take to control shrink (*Id*. at 52-53); and how to control the store's payroll budget (*Id*. at 129-30); while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar

maintains certain policies and procedures for the sake of consistency does not mean that Ward failed to exercise discretion in enforcing these policies and procedures.[11]

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). "The phrase 'customary and regular' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Ward regularly directed the work of his employees. (Doc. No. 347, Ward Dep. at 149, 186.)

Both sets of regulations also require the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Ward managed at least 80 employee hours 95.83% of the time he was a store manager during the relevant time period. (Doc. No. 347, Debrocq Decl. ¶ 8.) Therefore, Ward customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

---

[11] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

### 4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, *or* any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Ward's deposition testimony establishes that he meets the additional prong of the executive exemption test contained in the current regulations, namely that his suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Ward testified that he was directly involved with gathering applications, interviewing, and hiring employees. (Doc. No. 347, Ward Dep. at 62, 64-65, 80-81.) Ward also admitted that he terminated at least one employee. (*Id*. at 133-36.) For some hires, Ward would have to send the applicant's information to the corporate office for final approval. (*Id*. at 71.) If Ward liked an applicant, his recommendation would go to the district manager for approval. (*Id*. at 173.)

Therefore, while Ward may not always have had the ultimate decision making authority with respect to hiring, it is undisputable that at least some of his recommendations were closely followed, thereby satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Ward as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 346) is GRANTED and Plaintiff Shawn Ward is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Shawn Ward's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Shawn Ward.

**SO ORDERED.**

Signed: August 16, 2012

*Graham C. Mullen*
Graham C. Mullen
United States District Judge