**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932**

| | | |
|---|---|---|
| SHAWN ERIC WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FAMILY DOLLAR STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

     **THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 237); Plaintiff's Response to Defendant's Motion for Summary Judgement (Doc. No. 365); Defendant's Reply (Doc. No. 410).[1]  For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1]Plaintiff's case comes before this Court as part of a proposed collective action with Shawn Eric Ward as lead plaintiff. On January 22, 2008, this Court denied plaintiffs' Motion to Facilitate Notice. (3:06cv411, Doc. No. 67.) In a related action, this Court denied Plaintiff Irene Grace's Motion for Preliminary Certification as a Collective Action by Order dated September 6, 2007.  (3:06cv306, Doc. No. 78.)  On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to Ms. Grace's case and dismissed Ms. Grace from the action. (3:08md1932, Doc. No. 172.)  Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals.  The Court of Appeals held that Ms. Grace was a manager and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc.  *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2]To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions.  The Court will also disregard exhibits based on the *Morgan* case.  In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace,* 637 F.3d 508 (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Mamie Conway, began working at Family Dollar in 2000 as a cashier (Doc. No. 238, Conway Dep. at 22.)[3] She was promoted to store manager of store 4969 in May of 2002, and remained in that position until she was terminated on July 7, 2004.[4] (*Id.* at 31.) During that time, Conway was paid a salary of $565 per week. (Doc. No. 238, DeBrocq Decl. ¶ 5.)[5] During her time as manager, Conway earned bonuses in the amount of $234.87 in 2002, and $1,752.63 in 2003, bonuses that no other employee in her store received. (Doc. No. 238, Conway Dep. at 45-46.) Conway worked an average of 66.8 hours per week as store manager. (Doc. No. 238, DeBrocq Decl. ¶ 7.)

The record shows the hourly employees working at Conway's store, even using the highest wage for those employees whose wages varied over time, received an average hourly wage of $6.86 per hour. (*Id.* at ¶ 6.) Family Dollar's records reflect that Conway managed at least 80 employee hours 92.86% of the time she was a store manager. (*Id.* at ¶ 8.)

---

[3]The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[4]Conway filed her opt-in consent form on September 29, 2006. Accordingly, September 29, 2003, or three years prior to her opt-in date, through the end of her employment in July 2004, represents the longest possible relevant time period for Conway's claims in this action.

[5]The Court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566.)

Conway contends that she devoted at least 85% of her time performing nonexempt work, however, she was also responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 238, Conway Dep. at 169-72, 231-32.) Despite the fact that she may have been doing manual tasks, Conway admits that she was simultaneously managing her store at all times. (*Id*. at 90-91.) Conway's managerial tasks included training employees (*Id*. at 131-32. 220), maintaining the store's financial records (*Id*. at 189), and disciplining employees. (*Id*. at 90, 159, 178-80.) Conway decided how to complete the performance reviews for her employees (*Id*. at 159-60); how to reduce theft (*Id*. at 90-91, 198-99); how to apportion work among herself and her employees (*Id*. at 84-87, 247); how to review employment applications and select candidates for interviews (*Id*. at 99-102, 109-16); and what various types of merchandise to order. (*Id*. at 186-87.) Even when Conway was not physically present at the store she would receive phone calls when problems or issues arose. (*Id*. at 197-98.)

As store manager, Conway reported to a district manager. The district manager would typically visit the store once a month and would stay for approximately thirty minutes. (Doc. No. 238, Conway Dep. at 50, 54, 72-73.) Conway would also communicate with the district manager by phone, but they did not consistently communicate on a daily basis. (*Id.* at 54.) Family Dollar's records indicate that between May 2002 and November 2003, Conway's district manger was responsible for approximately twenty-seven stores. (Doc. No. 328, DeBrocq Decl. ¶ 10) During this time period the district spanned approximately 98 miles. (*Id.*) Between November 2003 and July 7, 2004, her district manager was responsible for forty-six stores. (*Id*.) During this time period the district spanned approximately 159 miles. (*Id.*)

**STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the]

4

evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the relevant time period covering Conway's claims, only the DOL regulations in effect prior to August 23, 2004 (the "pre-2004 regulations") apply to this analysis.[6]

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[7] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

---

[6]The current regulations went into effect on August 23, 2004 and Conway's claim covers the period of time between September 29, 2003 and July 7, 2004. Therefore, the regulations in effect prior to August 23, 2004 (the pre-2004 regulations) are the only regulations this Court will follow.

[7]The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

### 1. Family Dollar Satisfies the Salary Basis Test

As of September 2003 through her termination on July 7, 2004, Conway was paid a salary of $565 per week. (Doc. No. 238, DeBrocq Decl. ¶ 5.) Therefore, Family Dollar satisfies the salary basis test under the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test. 29 C.F.R. § 541.1(f) (pre-2004).[8]

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).

Upon consideration of the five factors identified for determining whether Conway's primary duty was management, the Court concludes that the factors are readily satisfied.

---

[8]The Court finds Conway's argument that she was merely a "working foreman" unavailing. Under the pre-2004 regulations, the working foreman concept only applies to the "long test," which does not apply here. 29 C.F.R. § 541.115(a)-(b) (describing the concept in terms of the long test's limitation on the amount of nonexempt work). The current regulations state that a *"manager in a retail establishment"* can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the *"production line."* (emphasis added.)

### a.      The Amount of Time Spent in Performance of Managerial Duties

Conway cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties.  The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004).  The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[9]  *Id; see also Grace,* 637 F.3d at 515.

The pre-2004 regulations provide a list of "management" activities, which include but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.[10]

---

[9]The Court disagrees with Conway's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Conway' reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that *specific case*. (emphasis added.)  Additionally, Conway' reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

[10]An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive.  *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666 at * 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in

29 C.F.R. § 541.102(b) (pre-2004).[11]  Conway explicitly testified that she regularly performed almost every one of these management activities as a Family Dollar store manager.

Courts have specifically addressed the concept of concurrent duties.[12]  Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the FLSA.  *See* 29 U.S.C. § 213(a)(1).[13]  "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager."  *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found that the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation."  *Id.* at 517.   Similar to the plaintiff in *Grace*, Conway contends that she devoted at least 85% of her time performing nonexempt work, however, she was also responsible for the overall management of the store for the entire time she was in the store.  (Doc. No. 238, Conway Dep. at 169-72, 231-32.)  For example, Conway was still responsible for her managerial duties, such as making sure employees

---

Section 541.102.").

[11] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102. As previously stated, however, the Court is following pre-2004 regulations.

[12] *See Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 637 (4th Cir. 2003) (manager exempt where she spent 75 to 80 percent of her time carrying out non-exempt tasks); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618-20 (8th Cir. 1991) (*Murray I*) (store managers met the primary duty test even though 65-95 percent of managers' time was spent on non-managerial duties).

[13] The FLSA recognizes the nature of a retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities."  29 U.S.C. § 213(a)(1).

were performing their duties correctly and ensuring that customers were having a good shopping experience, even when performing nonexempt work. (*Id*. at 90-91.) Even when Conway was not physically present at the store she would receive phone calls when problems or issues arose. (*Id*. at 197-98.) While Conway argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

### b.     The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Conway's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Conway's managerial tasks, which included training employees (Doc. No. 238, Conway Dep. at 131-32. 220), maintaining the store's financial records (*Id*. at 189), and disciplining employees (*Id*. at 90, 159, 178-80), were critical to the operation of the store. While Conway argues that she was under the direct supervision of the district manager, she nonetheless stated that during the relevant time period her district manager only came to her store once a month – not enough time to direct the managerial tasks. (*Id*. at 46-47, 50.) Therefore, the store could not have operated successfully without the managerial functions performed by Conway.

### c.     Frequency With Which the Employee Exercises Discretionary Power

Conway exercised discretion virtually every day and all day long in her capacity as store manager. Conway decided how to complete the performance reviews for her employees (Doc. No. 238, Conway Dep. at 159-60); how to reduce theft (*Id*. at 90-91, 198-99); how to apportion work among herself and her employees (*Id*. at 84-87, 247); how to review employment applications and select candidates for interviews (*Id*. at 99-102, 109-16); what various types of merchandise to order (*Id*. at 186-87); while at the same time, satisfying the needs of her customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, although Family Dollar maintains certain policies and procedures for the sake of consistency, Conway exercised discretion in deciding how to execute these policies and procedures.[14]

### d.     Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks.[15] *Grace*, 637 F.3d at 517. The *Grace* court also noted, apart from the district manager's supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. "The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them." *Id*. Moreover, courts have found that an employee's "frequent, even daily

---

[14]*See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (*Murray II*) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store managers); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace*, 637 F.3d 508, 516 (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

[15]*See also Jones*, 69 Fed.Appx. at 635-38 (employee was relatively free from supervision where district manager visited one to four times per week); *Thomas*, 506 F.3d at 449, 507 (plaintiff was relatively free from supervision where district manager visited once or twice per week).

exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Conway was relatively free from supervision during the relevant time period. Conway testified that her district manager would typically visit the store once a month and would stay for approximately thirty minutes. (Doc. No. 238, Conway Dep. at 50, 54, 72-73.) In addition, Conway admitted that she did not consistently speak with her district manager every day by telephone. (*Id.* at 54.) The infrequency of the district manager's visits, paired with the availability for Conway to communicate by phone with her district manager, does not equate to exacting supervision. *See Thomas*, 506 F.3d at 508.

Additionally, Family Dollar's records indicate that between May 2002 and November 2003, Conway's district manger was responsible for approximately twenty-seven stores. (Doc. No. 328, DeBrocq Decl. ¶ 10.) During this time period the district spanned approximately 98 miles. (*Id.*) Between November 2003 and July 7, 2004, her district manager was responsible for forty-six stores. (*Id*.) During this time period the district spanned approximately 159 miles. (*Id.*) The large territory and number of stores the district manager was responsible for supervising did not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

  e.  **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Conway earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows the hourly employees working at Conway's store, even using the highest wage for those employees whose wages varied over time, received an average hourly wage of $6.86 per hour. (Doc. No. 238, Debrocq Decl. ¶ 6.) In comparison, Conway worked an average of 66.8 hours per week as store manager. (*Id*. at ¶ 7.) During the relevant time period Conway earned compensation which, when computed on an hourly basis, averaged $8.46 per hour ($565 per week).

As to the second consideration, Conway was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. During her time as manager, Conway earned a bonus of $1,752.63 in 2003, a bonus which no other employee in her store received. (Doc. No. 238, Conway Dep. at 46.) A review of these calculations and comparisons reveal a significant difference in wages between Conway and her nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.119(a) (pre-2004). The pre-2004 regulations do not further define the terms "customary and regular." Conway testified that, on a daily basis, she directed the work of her employees. (Doc. No. 328, Conway Dep. at 39, 205, 222.)

The regulations also require that the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-

hours of work each week.  *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager).

Family Dollar's records reflect that Conway managed at least 80 employee hours 92.86% of the time she was a store manager during the relevant time period.  (Doc. No. 238, Debrocq Decl. ¶ 8.) Therefore, Conway customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Conway as an exempt executive under the FLSA.  No reasonable jury could find otherwise.  Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that:

(1)     Defendant's Motion for Summary Judgment (Doc No. 237)  is GRANTED and Plaintiff Mamie Conway is dismissed;

(2)     The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Mamie Conway's claim against Family Dollar;

(3)     The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Mamie Conway.

**SO ORDERED.**

Signed: August 22, 2012

Graham C. Mullen
United States District Judge