# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08 MD 1932

| | |
|---|---|
| SHAWN ERIC WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 249); Plaintiff's Response in Opposition (Doc. No. 363); Defendant's Reply (Doc. No. 396); and Defendant's Supplements to its Motions (Doc. No. 784).[1] For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action with Shawn Eric Ward as lead plaintiff. On January 22, 2008, this Court denied plaintiffs' Motion to Facilitate Notice. (3:06cv411, Doc. No. 67.) In a related action, this Court denied Plaintiff Irene Grace's Motion for Preliminary Certification as a Collective Action by Order dated September 6, 2007. (3:06cv306, Doc. No. 78.) On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to Ms. Grace's case and dismissed Ms. Grace from the action. (3:08md1932, Doc. No. 172.) Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Barbara Tucker, began working at Family Dollar in February of 2002 as store manager. (Doc. No. 250, Tucker Dep. at 14, 45.)[3] Over the course of her employment, Tucker managed six different stores: store 4150, store 4575, store 1906, store 2521, store 6513, and store 6252. (*Id*. at 45, 53-56.) Tucker stopped working at Family Dollar on July 9, 2005 due to a back injury. (*Id*. at 57.) Family Dollar's records show that she was not officially terminated until March 31, 2006.[4] (*Id*. at 57.) From September 29, 2003 to November 1, 2003, Tucker was paid a salary of $600 per week. (Doc. No. 784, DeBrocq Decl. ¶ 4.)[5] From November 2, 2003 through November 15, 2003, she received a salary of $606 per week. (*Id*.) From May 2, 2004 to September 18, 2004 she received a salary of $610 per week. (*Id*.) On September 19, 2004, her salary increased to $650 per week. (*Id*.) On November 14, 2004 her salary increased again to $700 per week. (*Id*.) Finally on May 29, 2005 her salary was increased to $720 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Tucker earned bonuses of $580.41 in October 2003, $369.46 in November 2004, $769.92 in June 2005,

---

[3] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[4] Tucker filed her opt-in consent form on September 29, 2006. Accordingly, September 29, 2003, or three years prior to her opt-in date, through the end of her employment in March 2006, represents the longest possible relevant time period for Tucker's claims in this action.

[5] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

and $159.36 in August 2005, bonuses for which hourly store employees were not eligible. (*Id*. at ¶ 5.) Tucker worked an average of 61 hours per week. (Doc. No. 250, Debrocq Decl. at ¶ 5.)

The record shows the hourly employees working at Tucker's stores, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $6.28 per hour. (*Id*. at ¶ 7.) Family Dollar's records reflect that Tucker managed at least 80 employee hours 98.15% of the time she was a store manager during the relevant time period. (*Id*. at ¶ 4.)

Tucker contends that she devoted 95% of her time to performing nonexempt work, but she was also responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 250, Tucker Dep. at 97-98.) Despite the fact that she may have been doing manual tasks, Tucker admits that she was simultaneously managing her store at all times. (*Id*. at 98-99, 181-82.)

Tucker's managerial tasks included training employees (Doc. No. 250, Tucker Dep. at 94), completing the store's financial paperwork (*Id*. at 205-06, 223-24), ordering merchandise (*Id*. at 201), controlling the flow and distribution of merchandise (*Id*. at 206, 210-211), and handling employee and customer complaints. (*Id*. at 104-05, 225.) Tucker decided how to review employment applications and who to call in for interviews (*Id*. at 84-85); how to adjust the schedule (*Id*. at 152-53); how to conduct performance reviews and discipline or coach employees (*Id*. at 113-14, 186-87); and how to apportion work among the employees and herself (*Id*. at 101-03, 177-79); while at the same time, satisfying customers.

As store manager, Tucker reported to a district manager. Tucker would be in contact with her district manager by phone approximately two to three times a week. (Doc. No. 250, Tucker Dep. at 120.) Tucker would receive emails from her district manager once or twice a

week. (*Id*. at 121.) Tucker admits that store managers, such as herself, were ultimately responsible for management of their individual stores while the district managers were responsible for overseeing the entire district. (*Id*. at 95-96.) Family Dollar's records indicate that Tucker managed stores in two separate districts during the course of her employment with the company. In one district, district 351, the district manager was responsible for 19 stores, including Tucker's. (Doc. No. 250, Debrocq Decl. ¶ 3.) The district spanned approximately 27 miles. (*Id*.) In the other district, district 73, the district manager was responsible for 42 stores. (*Id*.) The district spanned approximately 105 miles. (*Id*.)

Tucker testified that she was actively involved in sorting through applications to find the most promising candidates for employment. (Doc. No. 250, Tucker Dep. at 81-82.) She would conduct interviews, administer the pre-employment Stanton test, drug test, and background check and then make recommendations as to which applicant to hire. (*Id*. at 82-86.) As long as the candidate passed the tests, corporate always followed Tucker's recommendations. (*Id*. at 86.) Tucker recommended at least one person for promotion as well. (*Id.* at 171.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381

(4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The FLSA requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the time span of Tucker's claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the "pre-

5

2004 regulations"), and the regulations that went into effect on August 23, 2004 (the "current regulations").

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[6] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

Similarly, the current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these factors; the additional regulations are discussed below. Because Tucker's claim covers the period between September 2003 and March 2006, it is governed, in differing degrees, by both the pre-2004 and the current regulations. The application of the different regulations, however, is not material to the outcome of this case.

---

[6] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

### 1. Family Dollar Satisfies the Salary Basis Test

From September 29, 2003 to November 1, 2003, Tucker was paid a salary of $600 per week. (Doc. No. 784, DeBrocq Decl. ¶ 4.) From November 2, 2003 through November 15, 2003, she received a salary of $606 per week. (*Id*.) From May 2, 2004 to September 18, 2004 she received a salary of $610 per week. (*Id*.) On September 19, 2004, her salary increased to $650 per week. (*Id*.) On November 14, 2004 her salary again increased to $700 per week. (*Id*.) Finally on May 29, 2005 her salary was increased to $720 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Therefore, Family Dollar satisfies the salary basis test under both the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test, and the current regulations, which require a weekly salary of not less than $455 per week. 29 C.F.R. § 541.1(f) (pre-2004); 29 C.F.R. § 541.100.

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and

the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).[7]

Upon consideration of the five factors identified for determining whether Tucker's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

Tucker cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties.[8] Both sets of regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[9] *Id; see also Grace,* 637 F.3d at 515.

---

[7] The current regulations omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700.

[8] The Court finds Tucker's argument that she was merely a "working foreman" unavailing. Under the pre-2004 regulations, the working foreman concept only applies to the "long test," which does not apply here. 29 C.F.R. § 541.115(a)-(b) (describing the concept in terms of the long test's limitation on the amount of nonexempt work). The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line.*" (emphasis added.)

[9] The Court disagrees with Tucker's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Tucker's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that *specific case*. (emphasis added.) Additionally, Tucker's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

8

Both sets of regulations provide an almost identical list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.[10]

29 C.F.R. § 541.102(b) (pre-2004).[11] Tucker testified that she regularly performed almost every one of these management activities as a Family Dollar store manager.[12]

The current regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[13] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking

---

[10] An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666 at * 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[11] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

[12] The fact that the assistant managers can perform the same tasks as Tucker does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

[13] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in her work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

9

inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, Tucker contends that she devoted 95% of her time to performing nonexempt work, but she was also responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 250, Tucker Dep. at 97-98.) Despite the fact that she may have been doing manual tasks, Tucker admits that she was simultaneously managing her store at all times. (*Id*. at 98-99, 181-82.) While Tucker argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

>    b.   **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Tucker's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Tucker's managerial tasks, which included training employees (Doc. No. 250, Tucker Dep. at 94), completing the store's financial paperwork (*Id*. at 205-06, 223-24), ordering merchandise (*Id*. at 201), controlling the flow and distribution of merchandise (*Id*. at

10

206, 210-11), and handling employee and customer complaints (*Id*. at 104-05, 225), were critical to the operation of the store. While Tucker argues that she was under the direct supervision of the district manager, she nonetheless stated that the district manager only called the store two or three times a week, and corresponded via email once or twice a week – not frequently enough to direct the managerial tasks. (*Id*. at 120-21.) Therefore, the store could not have operated successfully without the managerial functions performed by Tucker.

        c.        **Frequency With Which the Employee Exercises Discretionary Power**

Tucker exercised discretion virtually every day and all day long in her capacity as store manager. Tucker decided how to review employment applications and who to call in for interviews (Doc. No. 250, Tucker Dep. at 84-85); how to adjust the schedule (*Id*. at 152-53); how to conduct performance reviews and discipline or coach employees (*Id*. at 113-14, 186-87); and how to apportion work among the employees and herself (*Id*. at 101-03, 177-79); while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, although Family Dollar maintains certain policies and procedures for the sake of consistency, Tucker exercised discretion in deciding how to execute these policies and procedures.[14]

        d.        **Relative Freedom from Supervision**

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to

---

[14] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (*Murray II*) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store managers); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace*, 637 F.3d at 516 (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*. Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Tucker was relatively free from supervision during the relevant time period. Tucker would be in contact with her district manager by phone approximately two to three times a week. (Doc. No. 250, Tucker Dep. at 120.) Tucker would receive emails from her district manager once or twice a week. (*Id*. at 121.) Tucker admits that store managers, such as herself, were ultimately responsible for management of their individual stores while the district managers were responsible for overseeing the entire district. (*Id*. at 95-96.) The infrequency of the district manager's contact does not equate to exacting supervision. *See Thomas*, 506 F.3d at 508.

Additionally, Family Dollar's records indicate that Tucker managed stores in two separate districts during the course of her employment with the company. In one district, district 351, the district manager was responsible for 19 stores, including Tucker's. (Doc. No. 250, Debrocq Decl. ¶ 3.) The district spanned approximately 27 miles. (*Id*.) In the other district, district 73, the district manager was responsible for 42 stores. (*Id*.) The district spanned approximately 105 miles. (*Id*.) The large territory and number of stores the district manager was responsible for supervising did not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

12

### e. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Id.* at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Tucker earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows the hourly employees working at Tucker's stores, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $6.28 per hour. (Doc. No. 250, DeBrocq Decl. ¶ 7.) In comparison, Tucker worked an average of 61 hours per week. (*Id.* ¶ 5.) Tucker earned compensation which, when computed on an hourly basis, averaged $9.84 per hour ($600 per week), $9.93 per hour ($606 per week), $10.00 per hour ($610 per week), $10.66 per hour ($650 per week), $11.48 per hour ($700 per week), and $11.80 per hour ($720 per week).

As to the second consideration, Tucker was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Tucker earned bonuses of $580.41 in October 2003, $369.46 in November 2004, $769.92 in June 2005, and $159.36 in August 2005, bonuses for which hourly store employees were not eligible. (Doc. No. 784, DeBrocq Decl. ¶ 5.) A review of these calculations and comparisons reveal a significant difference in wages between Tucker and her nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.100(a)(3). The pre-2004 regulations do not further define the terms "customary and regular," but the current regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Tucker managed at least 80 employee hours 98.15% of the time she was a store manager during the relevant time period. (Doc. No. 250, DeBrocq Decl. ¶ 4.) Therefore, Tucker customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

### 4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire <u>or</u> fire other employees <u>or</u> her recommendations as to the hiring, firing, advancement, promotion, <u>or</u> any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4) (emphasis added). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the

14

frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status."[15] *Id*.

Tucker's recommendations for hiring, firing, and change of status were given particular weight. With respect to her recommendations for hiring, Tucker testified that she was actively involved in sorting through applications to find the most promising candidates for employment. (Doc. No. 250, Tucker Dep. at 81-82.) She would conduct interviews, administer the pre-employment Stanton test, drug test, and background check and then make recommendations as to which applicant to hire. (*Id*. at 82-86.) As long as the candidate passed the tests, corporate always followed Tucker's recommendations. (*Id*. at 86.) Tucker recommended at least one person for promotion as well. (*Id.* at 171.) Therefore, while Tucker may not have always been the final decision maker, Tucker's recommendations for hiring and change of status were given particular weight and each independently satisfies this factor.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Tucker as an exempt executive

---

[15] *See Davis v. Family Dollar Stores*, No. 3:03-0170 (D.S.C. Sept. 28, 2004) ("the record shows that plaintiff had considerable influence in the hiring and firing of employees in her store even though they ultimately had to be approved by higher management"); *Lovelady v. Allsup's Convenience Stores, Inc*., 304 Fed.Appx. 301, 305-06 (5th Cir. 2008) (managers who did not have ultimate authority still satisfied test where they made recommendations which were almost always followed); *Grace*, 637 F.3d at 514 (manager's suggestions regarding the hiring of employees were given significant weight when the district manager followed those recommendations 95% of the time).

under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## **ORDER**

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 249) is GRANTED and Plaintiff Barbara Tucker is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Barbara Tucker's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Barbara Tucker.

**SO ORDERED.**

Signed: August 24, 2012

Graham C. Mullen
United States District Judge