IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| SHAWN ERIC WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| FAMILY DOLLAR STORES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 334); Plaintiff's Response in Opposition (Doc. No. 429); and Defendant's Reply (Doc. No. 471).[1] For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action with Shawn Eric Ward as lead plaintiff. On January 22, 2008, this Court denied Plaintiffs' Motion to Facilitate Notice. (3:06cv441, Doc. No. 67.) In a related action, this Court denied Plaintiff Irene Grace's Motion for Preliminary Certification as a Collective Action by Order dated September 6, 2007. (3:06cv306, Doc. No. 78.) On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to Ms. Grace's case and dismissed Ms. Grace from the action. (3:08md1932, Doc. No. 172.) Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Christopher Anderson ("Anderson") began working for Family Dollar in October 2001 as an assistant store manager.[3] (Doc. No. 336, Anderson Dep. at 24.)[4] Over the next several years, Anderson intermittently managed six different Family Dollar stores as store manager and received various pay increases. (*Id.* at 25-33.) Anderson is presently a store manager for Family Dollar. (*Id.*) As of July 1, 2003, Anderson was paid a salary of approximately $600 per week. (*Id.*) Anderson received various pay increases ranging from $600 to $950 per week as a store manager. (*Id.*) Anderson earned bonuses of $1,906.35 in 2003, $1,010.67 in 2004, $1,564.21 in 2005, $126.55 in 2006, and $3,981.19 in 2007. (Doc. No. 336, DeBrocq Decl. ¶ 6.)[5] Anderson worked an average of 59.38 hours per week. (*Id.* at ¶ 7.)

The record shows the hourly employees working at Anderson's stores, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $ 7.70 per hour. (*Id.* at ¶ 9.) Anderson testified that, on a daily basis, he directed the work of his employees. (Doc. No. 336, Anderson Dep. at 202-05, 229-30.) Family Dollar's

---

[3] Anderson filed his opt-in consent form on June 1, 2006. Accordingly, June 1, 2003, or three years prior to his opt-in date represents the longest possible relevant time period for Anderson's claims in this action.

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts his sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony he gave in his deposition, where he was examined at length about his responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[5] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

records reflect that Anderson managed at least 80 employee hours 98.63% of the time he was a store manager during the relevant time period. (Doc. No. 336, DeBrocq Decl. ¶ 8.)

Anderson contends that he devoted 85% of his time performing nonexempt work, but admitted that he was also responsible for the overall management of the store for the entire time he was in the store. (Doc. No. 336, Anderson Dep. at 145.) He admitted that he managed the store, regardless of the fact that he may have been performing other activities in the store at the same time. (*Id.* at 142, 222, 229-30.) For example, Anderson would supervise or train his employees while he was handling the cash register, sweeping the floors, cleaning the bathrooms, or performing other non-managerial tasks. (*Id.* at 109-112.)

Anderson's managerial tasks included training employees (*Id.* at 102-112), completing the store's financial paperwork (*Id.* at 139-40, 148-50), apportioning hours to employees (*Id.* at 113-18, 121-22), and addressing customer complaints (*Id.* at 164). Anderson also decided how to review employment applications (*Id.* at 84-102); how to adjust the schedule (*Id.* at 113, 115-18, 121-22); how to assign and apportion work among himself and his employees (*Id.* at 136, 141-42); and what various types of merchandise to order (*Id.* at 152-54).

As store manager, Anderson reported to a district manager. Anderson testified that he was supervised by several district managers during his time at Family Dollar, and that his district manager would typically visit the store once or twice a month. (*Id.* at 67-70.) He also testified that the district manager would contact him daily by telephone and email. (*Id.* at 78-80.) Charles Wiltshire was Anderson's district manager between March 2003 and September 2003. (Doc. No. 336, DeBrocq Decl. ¶ 4.) He was the district manager for approximately 15 stores spanning 63.2 miles. (*Id.*) Joann Palmeri served as Anderson's district manager from September 2003 until June 2004. (*Id.*) She was the district manager for approximately 15-24 stores in a district

spanning 52.7 and 51.6 miles. (*Id.*) Richard Ennis served as Anderson's district manager from June 2004 until October 2004. (*Id.*) He was the district manager for approximately 18 stores in a district spanning approximately 22.3 miles. (*Id.*) Joann Palmeri was again Anderson's district manager from October 2004 until March 2005. (*Id.*) She was the district manger for 24 stores in a district spanning approximately 41.7 miles. (*Id.*) Teresa Wilson has served as Anderson's district manager from March 2005 until present. (*Id.*) She is the district manager for 33 stores in a district spanning 63.2 miles. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

4

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The FLSA requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due the time span of Anderson's claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the "pre-2004 regulations") and the regulations that went into effect on August 23, 2004 (the "current regulations").

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[6]

---

[6] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for his services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) his primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

Similarly, the current regulations provide that an employee qualifies as an executive if: (1) he is compensated on a salary basis at a rate of at least $455 per week; (2) his primary duty is management of the enterprise; (3) he customarily and regularly directs the work of two or more other employees; and (4) he has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. Because Anderson's claim covers the period of June 1, 2003[7] to present day, it is governed, in differing degrees, by both pre-2004 and current regulations. The application of the different regulations, however, is not material to the outcome of this case.

1. **Family Dollar Satisfies the Salary Basis Test**

As of July 1, 2003, Anderson was paid a salary of approximately $600 per week. (Doc. No. 336, Anderson Dep. at 25-33.) Anderson proceeded to manage six different Family Dollar stores and received various pay increases ranging from $600 to $950 per week as a store manager. (*Id.*) Therefore, Family Dollar satisfies the salary basis test under both the pre-2004

---

[7] *See supra* FN 3.

regulations, which require a weekly salary of not less than $250 per week under the short test[8], and the current regulations, which require a weekly salary of not less than $455 per week. 29 C.F.R. § 541.1(f) (pre-2004); 29 C.F.R. § 541.100.

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).[9]

Upon consideration of the five factors identified for determining whether Anderson's primary duty was management, the Court concludes that the factors are readily satisfied.

#### a. The Amount of Time Spent in Performance of Managerial Duties

---

[8]The Court finds Anderson's argument that he was merely a "working foreman" unavailing. Under the pre-2004 regulations, the working foreman concept only applies to the "long test," which does not apply here. 29 C.F.R. § 541.115(a)-(b) (describing the concept in terms of the long test's limitation on the amount of nonexempt work). The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line.*" (emphasis added.)

[9] The current regulations omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700.

Anderson cannot overcome the exemption by claiming he spent the majority of his time performing non-managerial duties. Both sets of regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[10] *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011).

Both sets of regulations provide an almost identical list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.[11]

---

[10] The Court disagrees with Anderson's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Anderson's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that *specific case*. (emphasis added.) Additionally, Anderson's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

[11] An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

29 C.F.R. § 541.102(b) (pre-2004).[12]  Anderson explicitly testified that he regularly performed almost every one of these management activities as a Family Dollar store manager.

The current regulations specifically address the concept of concurrent duties.  29 C.F.R. § 541.106.  Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations.  *Id*; *see also* 29 U.S.C. § 213(a)(1).[13]  "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager."  *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation."  *Id.* at 517.   Similar to the plaintiff in *Grace*, even though Anderson contends that he devoted 85% of his time performing nonexempt work, he was also responsible for the overall management of the store for the entire time he was in the store.  (Doc. No. 336, Anderson Dep. at 145.)  He admitted that he managed the store, regardless of the fact that he may have been performing other activities in the store at the same time.  (*Id.* at 142, 222, 229-30.)  For example, Anderson would supervise or train his employees while he was handling the cash register, sweeping the floors, cleaning the bathrooms, or performing other non-managerial tasks.  (*Id*. at 109-112.)  While Anderson argues that management was not his primary duty because he spent a majority of his time engaged in

---

[12] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures.  29 C.F.R. § 541.102.

[13] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities."  29 U.S.C. § 213(a)(1).

manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

> **b.** **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Anderson's managerial duties were more important than the other duties he performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Anderson's managerial tasks, which included training employees (Doc. No. 336, Anderson Dep. at 102-112), completing the store's financial paperwork (*Id*. at 139-40, 148-50), apportioning hours to employees (*Id*. at 113-18, 121-22), and addressing customer complaints (*Id*. at 164) were critical to the operation of the store. While Anderson argues that he was under the direct supervision of the district manager, he nonetheless stated that the district manager came to the store once or twice a month – not enough to direct the managerial tasks. (*Id*. at 67-70.) In fact, Anderson acknowledged that when the district manager was not there, the store managers were responsible for managing their particular stores. (*Id*. at 65-70.) Therefore, the store could not have operated successfully without the managerial functions performed by Anderson.

> **c.** **Frequency With Which the Employee Exercises Discretionary Power**

Anderson exercised discretion virtually every day and all day long in his capacity as store manager. Anderson decided how to review employment applications (*Id*. at 84-102); how to

adjust the schedule (*Id*. at 113, 115-18, 121-22); how to assign and apportion work among himself and his employees (*Id*. at 136, 141-42); what various types of merchandise to order (*Id*. at 152-54); and, while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, although Family Dollar maintains certain policies and procedures for the sake of consistency, Anderson exercised discretion in deciding how to execute these policies and procedures.[14]

### d. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*. Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d at 508 (6th Cir. 2007).

Anderson was relatively free from supervision during the relevant time period. Anderson testified that he was supervised by several district managers during his time at Family Dollar, and that his district manager would typically visit the store once or twice a month. (Doc. No. 336, Anderson Dep. at 67-70.) He also testified that the district manager would contact him

---

[14]The existence of detailed company policies does not destroy the exemption. *See Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 635-38 (4th Cir. 2003).

11

daily by telephone and email. (*Id.* at 78-80.) The infrequency of the district managers visits and Anderson's frequent exchange of email and phone communications with his district manager does not equate to exacting supervision. *See Thomas*, 506 F.3d at 508.

Additionally, Family Dollar's records indicate that Anderson has had four different district managers while employed at Family Dollar. Charles Wiltshire was Anderson's district manager between March 2003 and September 2003. (Doc. No. 336, DeBrocq Decl. ¶ 4.) He was the district manager for approximately 15 stores spanning 63.2 miles. (*Id.*) Joann Palmeri served as Anderson's district manager from September 2003 until June 2004. (*Id.*) She was the district manager for approximately 15-24 stores in a district spanning 52.7 and 51.6 miles. (*Id.*) Richard Ennis served as Anderson's district manager from June 2004 until October 2004. (*Id.*) He was the district manager for approximately 18 stores in a district spanning approximately 22.3 miles. (*Id.*) Joann Palmeri was again Anderson's district manager from October 2004 until March 2005. (*Id.*) She was the district manager for 24 stores in a district spanning approximately 41.7 miles. (*Id.*) Teresa Wilson has served as Anderson's district manager from March 2005 until present. (*Id.*) She is the district manager for 33 stores in a district spanning 63.2 miles. (*Id.*) The large territories and number of stores the district managers were responsible for supervising does not allow them to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

      e.      **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a

"profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Anderson earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows the hourly employees working at Anderson's stores, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $ 7.70 per hour. (Doc. No. 336, DeBrocq Decl. ¶ 9.) In comparison, Anderson worked an average of 59.38 hours per week. (*Id.* at ¶ 7.) Anderson earned compensation which, when computed on an hourly basis, averaged between $10.10 per hour ($600 per week) and $16.00 per hour ($950 per week).

As to the second consideration, Anderson was a "profit center;" his performance evaluation, salary, and bonus depended on his store's profitability. (*Id*. at 86:7, 87:12.); *See Grace*, 637 F.3d at 517. Anderson earned bonuses of $1,906.35 in 2003, $1,010.67 in 2004, $1,564.21 in 2005, $126.55 in 2006, and $3,981.19 in 2007, for which nonexempt store employees were not eligible. (Doc. No. 336, DeBrocq Decl. ¶ 6.) A review of these calculations and comparisons reveal a significant difference in wages between Anderson and his nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.100(a)(3). The pre-2004 regulations do not further define the terms "customary and regular," but the current regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than

13

constant." 29 C.F.R. § 541.701. Anderson testified that, on a daily basis, he directed the work of his employees. (Doc. No. 336, Anderson Dep. at 202-05, 229-30.)

Both sets of regulations also require that the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a); 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Anderson managed at least 80 employee hours 98.63% of the time he was a store manager during the relevant time period. (Doc. No. 336, DeBrocq Decl. ¶ 8.)[15] Therefore, Anderson customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

4. **Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight**

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire or fire other employees or his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4) (emphasis added). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the

---

[15]Anderson's deposition testimony also supports Family Dollar's records. He testified that at the stores he managed, the number of employees he supervised ranged from five to eleven. (Doc. No. 336, Anderson Dep. at 125-27.)

frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105.  Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Anderson had the authority to hire and his recommendations for hiring were given particular weight. With respect to his authority to hire, Anderson testified that he had the authority to hire new clerks/cashiers without prior approval, other than confirmation that the candidates passed their Stanton tests and drug screening.  (Doc. No. 336, Anderson Dep. at 84-102.)  With respect to his recommendations for hiring, Anderson testified that he was actively involved in the interviewing and employee screening process.  He would identify the best candidates from all of those who had submitted applications, and then decide which of those candidates to hire.  (*Id.*)  Therefore, both Anderson's authority to hire employees and the fact that his recommendations were given particular weight each independently satisfy this factor.

## **CONCLUSION**

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Anderson as an exempt executive under the FLSA.  No reasonable jury could find otherwise.  Therefore, Family Dollar is entitled to judgment as a matter of law.

## **ORDER**

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 334) is GRANTED and Plaintiff Christopher Anderson is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Christopher Anderson's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Christopher Anderson.

**SO ORDERED.**

Signed: August 27, 2012

Graham C. Mullen
United States District Judge